MICHAEL KEATING

v.

WARREN SPRINGER.

Filed at Ottawa June 19, 1893.

1. APPEALS AND WRITS OF ERROR—*what matters to be considered— admission of evidence.* The propriety of the admission or exclusion of evidence on the trial involves a question of law, which may be reviewed by this court on appeal from the Appellate Court.

2. EASEMENT—*air and light over adjoining close.* The prevalent rule in the United States, including this State, is, that an easement in the unobstructed passage of light and air over an adjoining close can not be acquired by prescription.

3. It is established by the weight of American authority, that a grant of the right to the use of light and air will not be implied from the conveyance of a house with windows overlooking the land of the grantor, and that when the owner of two adjacent lots conveys one of them, a grant of an easement for light and air will not be implied from the nature or use of the structure existing on the lot at the time of the conveyance, or from the necessity of such easement to the convenient enjoyment of the property.

4. LEASE—*covenant against obstructing light, construed.* A lease of premises consisting, first, of the basement, and secondly, the store floor, and "also a space in the yard at the rear, twenty-five feet deep," contained a provision as follows: "Party of the first part shall not build at the rear of said premises nearer than twenty-five feet, and no obstruction higher than six feet shall be placed in such manner as to obstruct light to said premises:" *Held,* that the meaning of the word "premises" should not be restricted to the demised building alone, but embraces also the space in the rear thereof, and that the agreement not to place any obstruction exceeding six feet in height was not confined to the rear of the demised building.

5. LANDLORD AND TENANT—*obstructing passage of air and light to tenant's windows.* A landlord will not be liable for obstructing his tenant's windows by building on the adjoining close, in the absence of any covenant or agreement in the lease forbidding him to do so. But the right to have the light and air enter the windows of a building over an adjoining lot may exist by express grant, or by virtue of an express covenant or agreement.

6. Where a landlord covenants with the tenant that no obstruction higher than six feet shall be placed by the former in such manner as

31—146 ILL.

146 481
158 484
146 481
62a 127
146 481
64a 579
146 481
167 101
68a 163
146 481
76a 693
146 481
77a 154
146 481
a188 ²583
146 481
213 ⁸541
213 ⁷543

to obstruct light to said premises, and the landlord erects a five-story building near the demised premises, the tenant, in an action against him for the rent, and in an action by him against the landlord for damages, will have the right to show, if he can, that the new building is placed in such manner as to obstruct light to the demised premises.

7. SAME—*what constitutes an eviction.* In order to constitute an eviction it is not necessary that there should be an actual physical expulsion. Acts of a grave and permanent character, which amount to a clear indication of intention on the landlord's part to deprive the tenant of the enjoyment of the demised premises, will constitute an eviction.

8. SAME—*wrongful acts of landlord.* If the acts of the landlord are such as merely tend to diminish the beneficial enjoyment of the premises, the tenant is still bound for the rent if he continues to occupy the premises. Unless he abandons the premises, his obligation to pay rent remains. The rule is well settled that the wrongful act of the landlord does not debar him from a recovery of rent, unless the tenant, by such act, has been deprived, in whole or in part, of the possession, either actually or constructively, or the premises are rendered useless.

9. The landlord, without being guilty of an actual physical disturbance of the tenant's possession, may yet do such acts as will justify the tenant in leaving the premises. The latter may abandon the premises in consequence of such acts, or he may continue to occupy them. If he abandons them, then the circumstances which justify such abandonment, taken in connection with the act of abandonment itself, will support a plea of eviction against an action for rent.

10. If the tenant makes no surrender of the possession, but continues to occupy the premises after the commission of the acts which would justify him in abandoning them, he will be deemed to have waived his right to abandon ; and he can not sustain a plea of eviction by showing that there were circumstances which would have justified him in leaving the premises. There can not be a constructive eviction without a surrender of possession.

11. SAME—*recoupment of damages against rents.* Although the tenant will not be allowed to plead an eviction as a bar to a recovery of rent, when he has remained in possession after the performance of the acts which would have justified him in leaving the premises, yet he is not for that reason without remedy. He may recoup such damages as he may have sustained by reason of the acts of the landlord, against the rent sought to be recovered.

12. Where a landlord erects a new building near the premises demised by him, in violation of his express agreement not to obstruct the passage of air and light to the leased premises by any structure over six feet high, the tenant, when sued for rent, having retained the

premises, may show, in defense, the effect of such new building upon the supply of light, so that any damages sustained by him may be recouped.

13. SAME—*action against landlord for breach of covenants.* It is well settled that although the omission of the landlord to perform his covenants may not amount to an eviction nor operate as a bar to his claim for rent, yet the lessee has his remedy by an action to recover damages for a breach of the covenant.

14. FORMER ADJUDICATION—*judgment in forcible detainer.* A judgment for the plaintiff in forcible entry and detainer is conclusive only as to the right of possession, and in a certain class of cases, as to the existence of the relation of landlord and tenant between the parties, and as to the tenant's wrongful holding over.

15. A landlord recovered a judgment in forcible detainer against his tenant, and sued for rents. The tenant set up in defense an injury for the breach of a covenant in the lease, and also brought his action against the landlord to recover for the breach of his covenants: *Held,* that the judgment was no bar to the second suit, and did not preclude the tenant from recouping damages against the rent.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

On March 15, 1884, appellee executed a written lease of certain premises to appellant for the period, extending from April 1, 1884, to April 1, 1894, for $30,000.00, payable in monthly installments of $250.00 each. The premises are described in the lease as follows: "all those premises situate * * * in the city of Chicago * * * known and described as follows, to-wit: The basement of the building known as Nos. 201, 203 and 205 So. Canal street, Chicago, being a space 50 feet by 70 feet, more or less; also the store floor of part of said building, and known as Nos. 201 and 203 So. Canal street, being a space 50 feet by 50 feet, more or less; also a space in the yard at the rear of said building, commencing at the N. W. quarter of said building, then west 25 feet, then south 25 feet, then east 25 feet to building, together with steam power not to exceed ten horse power, said steam

power to be furnished ten hours per day, Sundays and holidays excepted; said premises hereby leased to be used and occupied as a marble works and kindred business, and in no manner as to damage or interfere with tenants of adjoining property."                                          \

The lease contained, among others, the following provisions, towit: "Party of the first part (Springer) shall not build at the rear of said premises nearer than twenty-five feet, and no obstruction higher than six feet shall be placed in such manner as to obstruct light to said premises; and party of the second part shall at all times have the use and free access through all now existing alleys leading to rear of said premises."

Appellant occupied the premises under the lease from its date until July 17, 1888, when he left them. The building was a two story and basement frame building, fronting east on Canal street between Van Buren street on the south and Jackson street on the north, and having a depth of 50 feet. It had windows in the front and rear and on the north and south sides. The territory around it was practically vacant at the date of the lease. There was then no building to the south of it nearer than 40 or 45 feet, except, perhaps, a small shed; none in the rear or to the west of it nearer than about 60 feet, and none to the north nearer than 30 feet or more. There were some sheds and platforms to the north and some rubbish to the west, but nothing to obscure the light needed for cutting and polishing marble. In the space on the south there was an alley running west from Canal street to Clinton street, connecting with which was another alley running north and south in the rear of the premises in question.

In 1885 appellee erected a large brick building, called the Springer building, having five stories above the basement, fronting 26 feet on Canal Street and having a depth of 75 feet. Its north wall was immediately against the south wall of appellant's building, called the Keating building; and it extended 25 feet further west than the Keating building, the

extension of 25 feet being south of the space in the rear of the Keating building, as described in the lease. The proof tends to show, that appellee dug excavations on the lines of the alleys, and built boiler and machine shops in the rear of the Keating building, and placed obstructions of various kinds in the alleys and in the space to the rear of the Keating building. From the differences growing out of these transactions various suits have resulted.

Appellee brought against appellant a suit in assumpsit for the use and occupation of said premises, to which non-assumpsit was pleaded; a suit upon a note alleged to have been given for rent, to which pleas of non-assumpsit and set-off were filed; three proceedings of distress for rent, in which the general issue, and certain special pleas of set-off, and general replications to the latter, were filed; and appellant brought an action in case against appellee to recover damages for cutting off his light by the erection of the Springer building and other obstructions, to which the plea of not guilty was filed. The said special pleas set up violations of the covenants of the lease by alleging, that the light was shut off on the south and in the rear by the Springer building and its extension to the west, and by the erection of shafting and machinery and other obstructions more than 15 feet high, and that the alleys were closed up by the placing therein of iron boilers, castings, engines, building material, etc., and that steam power was not furnished, etc.

The suit for use and occupation was begun in the Circuit court of Cook County; of the other suits, one was begun in said Circuit court, one in the Superior court of said county, and three in the county court of said county. The four suits last named were transferred by proper orders to the Circuit court, and an order was entered by the latter court in the suit for use and occupation consolidating the other suits with it. A stipulation was entered into between counsel, that there should be one trial, which should determine the matters in

controversy in all the suits. A jury was waived and by agreement the consolidated cause was submitted for trial before one of the judges of the Circuit court without a jury.

Upon the trial the plaintiff, Springer, introduced the written lease and proved the amount of unpaid rent due thereon from October, 1887, to July 17, 1888. A large mass of evidence was introduced by the defendant Keating, principally in support of the contentions, that buildings and obstructions were erected in the rear of the premises nearer than 25 feet, and that the use of the alleys and free access through the same were interfered with and cut off. In contradiction of this evidence a large number of witnesses were examined by the plaintiff. At the close of his testimony thus introduced, the plaintiff offered in evidence and the court received, over defendant's objection and exception, the proceedings in a forcible entry and detainer suit begun by Springer against Keating before a justice of the peace on April 25, 1888, wherein the complainant alleges that Springer was entitled to the possession of said premises and that Keating unlawfully withholds the same; wherein judgment was rendered in favor of Springer on May 8, 1888, and an appeal was taken and perfected to the Superior Court, which appeal was dismissed on July 9, 1888, and a further appeal was taken and allowed to the Appellate Court upon filing bond and bill of exceptions within twenty days.

On October 3, 1891, judgment was entered by the Circuit Court in favor of Springer for $2907.50 against Keating, and in the suit of Keating against Springer the latter was found not guilty. This judgment has been affirmed by the Appellate Court, and the case is brought here by appeal.

Messrs. HANECY & MERRICK, for the appellant:

A tenant is required to pay rent only for the beneficial enjoyment of the premises, unmolested, in any way, by the landlord. Taylor on Landlord and Tenant, 381.

If a tenant is evicted at any time before rent becomes due, the rent is not payable at all. Taylor on Landlord and Tenant, 389; 3 Kent's Com. 464; *Wade* v. *Halligan,* 16 Ill. 507; *Hayner* v. *Smith,* 63 id. 433; *Press Association* v. *Brooks,* 30 Ill. App. 114.

When a lessee is, by his lessor, wrongfully evicted from a portion of the demised premises, he is thereby excused from the payment of any of the rent, although he remains in possession of the remaining portion to the end of the term. *Hayner* v. *Smith,* 63 Ill. 430.

The main question is as to the materiality of the evidence, and this involves the question of the right to set up, as a defense to the payment of rent, that the party was disturbed in his quiet and peaceable possession, was evicted from part of the premises and injured, and the value of the rent so diminished. *Wade* v. *Halligan,* 16 Ill. 511.

The law undoubtedly is, that if the landlord evicts the tenant from a part of the demised premises, the tenant is under no legal obligation to pay for the remainder, although he continues to enjoy it. *Anderson* v. *Insurance Co.* 21 Ill. 603.

If the landlord, by any act of his, renders the lease unavailing to the tenant, he is thereby exonerated from the terms and conditions of the lease, and he may abandon it. *Leadbeater* v. *Roth,* 25 Ill. 480.

It has been held by this court, and seems to be the well recognized doctrine of other courts, that an eviction of the tenant by the landlord, or a stranger, before the end of the term, will exonerate the tenant from the further payment of rent. It is also held, that if the landlord does any act which renders the lease unavailing to the tenant, he is thereby discharged from the terms and conditions of the lease, and may abandon it. *Halligan* v. *Wade,* 21 Ill. 470; *Anderson* v. *Insurance Co.* 21 id. 601; *Leadbeater* v. *Roth,* 25 id. 587.

In the first of these cases it appeared that the landlord leased other portions of the building for a drinking saloon

and a tinshop, thereby rendering the portion held by the tenant unfit for a hotel, for which purpose it had been leased, and it was held, that inasmuch as the landlord had rendered the premises useless to the tenant, it amounted to an eviction, and the tenant might abandon the property. It is true that the tenant has his action for a breach of the covenants of the landlord, but he may also abandon the premises, as the landlord, by his act, has thereby terminated the lease. *Wright* v. *Lattin*, 38 Ill. 296; *Lynch* v. *Baldwin*, 69 id. 212; *Dexter* v. *Manley*, 4 Cush. 14; *Field* v. *Herrick*, 10 Bradw. 503; *Smith* v. *Wise*, 58 id. 141; Taylor on Landlord and Tenant, 377.

The action of forcible entry and detainer is purely a civil remedy, the sole object of which is to regain the possession which has been invaded, and the only judgment that can be rendered is, that the plaintiff have restitution of the premises of which he has been unjustly deprived. Damages are not recoverable in this action. *Robinson* v. *Crummer*, 10 Ill. 218.

Our contention is, that the act of appellee in constructing a five-story and basement brick building immediately adjoining the premises leased to appellant, when appellee knew, or must have known, that such a building would utterly deprive the tenant of the use of the south side of the demised premises, and extending the building twenty-five feet west of the rear of the demised premises, thus cutting off light, not only from the south but from the west of the demised premises, was such a breach of the universally implied covenant for quiet possession and beneficial enjoyment as to constitute an eviction, and excuse the tenant from the further payment of rent. *Wade* v. *Halligan*, 16 Ill. 508; *Barrington* v. *Casey*, 68 id. 517; *Lynch* v. *Baldwin*, 69 id. 212; *Hayner* v. *Smith*, 63 id. 430; *Field* v. *Herrick*, 10 Bradw. 503; *Doyle* v. *Lord*, 64 N. Y. 432.

Mr. ALLAN C. STORY, for the appellee:

A general finding of the issues by the court is not open to review on appeal. *Santa Anna* v. *Frank*, 113 U. S. 329.

On appeal from the Appellate Court, when no propositions of law are submitted, and no exceptions are taken in the trial court except to the entry of judgment, no question is presented which this court can consider. *Myers* v. *Bank,* 128 Ill. 478; *McDonald* v. *Allen,* id. 521.

In such cases, a party who is cast is in no better position than one who submits his case to a jury without instructions, —there is nothing to review in either case. *Montgomery* v. *Black,* 124 Ill. 57.

The Supreme Court can never consider questions of law in a case where no written propositions to be held as law in the decision of the case were submitted to the trial judge. *Bank* v. *Haskell,* 124 Ill. 587; *Mutual Aid Ass.* v. *Hall,* 118 id. 169; *Tibballs* v. *Libby,* 97 id. 552; *Hobbs* v. *Ferguson's Estate,* 100 id. 232; *Barber* v. *Hawley,* 116 id. 91; *Christy* v. *Stafford,* 123 id. 463; *Bridge Co.* v. *Commissioners,* 101 id. 518.

There must be propositions submitted, rulings made thereon by the trial judge, and exceptions thereto distinctly taken and preserved in the bill of exceptions, to entitle a party to review a decision of a trial judge upon a question of fact, after affirmance in the Appellate Court. *Merrimac* v. *Bank,* 129 Ill. 296; *Gould* v. *Howe,* 127 id. 251; *Power Co.* v. *City of Carlisle,* 31 Ill. App. 325; *Insurance Co.* v. *Butterley,* 133 Ill. 534; *McIntyre* v. *Sholty,* 121 id. 660.

To constitute an eviction without physical ouster, the tenant must have abandoned the premises in consequence of acts of the landlord so illegal and monstrous as to be equivalent to an absolute physical ouster. *Mortimer* v. *Brunner,* 6 Bosw. 653; *Ogilvie* v. *Hull,* 5 Hill, 52; Taylor on Landlord and Tenant, secs. 380, 381, and note.

While the lessee remains in possession of the demised premises, or any portion thereof, he can claim only a *pro rata* reduction of the rent for such part as he has been disturbed in the enjoyment of. Taylor on Landlord and Tenant, sec. 358, and note; *Willard* v. *Silliman,* 19 Wend. 358.

No wrongful act of the landlord will suspend or extinguish the rent if the tenant continues to occupy the premises during the time such rent accrued. Taylor on Landlord and Tenant, sec. 380; *Edgerton* v. *Page,* 20 N. Y. 281; 1 Hilton, 320.

If there are only acts of trespass on the part of the landlord, or which merely diminish the beneficial occupation of the lessee, he must abandon the premises or be still bound for the rent. *Elliott* v. *Aiken,* 45 N. H. 35; *Upton* v. *Greenless,* 17 C. B. 51; *Gilhooley* v. *Washington,* 4 N. Y. 217; *Wilson* v. *Smith,* 5 Yerg. 379; *Morrison* v. *Chadwick,* 7 C. B. 266; *Rogers* v. *Ostrom,* 35 Barb. 523; *Leadbeater* v. *Roth,* 25 Ill. 587; *Edgerton* v. *Page,* 20 N. Y. 281, and cases cited; 1 Taylor on Landlord and Tenant, sec. 381, note 2.

The judgment in the forcible detainer suit was conclusive on appellant as to all matters relied on by him here. Freeman on Judgments, sec. 259; Bigelow on Estoppel, 144; *Riverside Co.* v. *Townsend,* 120 Ill. 15; *McCarthy* v. *Ostrom,* 118 id. 403; *Cochran* v. *Fogler,* 116 id. 194; *Preston* v. *Zahl,* 4 Bradw. 423.

The right to abandon the demised premises by reason of a constructive eviction may be waived by acts of the tenant inconsistent with the right to abandon, as, by retaining possession. *Crommelin* v. *Theiss,* 31 Ala. 412; *Dyatt* v. *Pendleton,* 1 Wash. 561; *Royce* v. *Guggenheim,* 106 Mass. 201; *DeWitt* v. *Parsons,* 112 id. 8; *Borell* v. *Lawton,* 90 N. Y. 293; *Wright* v. *Lattin,* 38 Ill. 293.

The tenant must abandon possession or pay rent. *Cram* v. *Dresser,* 2 Sand. 120; *Rogers* v. *Ostrom,* 35 Barb. 523; *Cohen* v. *Dufort,* 1 Sand. 260; *Elliott* v. *Aiken,* 45 N. H. 35; *Mortimer* v. *Brunner,* 6 Bosw. 653; *Academy of Music* v. *Hackett,* 2 Hilt. 217; *Edgerton* v. *Page,* 20 N. Y. 281.

It is an undisputed principle of law in the United States, that a grant of one of two adjoining lots by the owner does not confer upon the grantee any right of unobstructed passage of light and air over the other, nor will such right be implied. Woodfall on Landlord and Tenant, 703, note 1; *Keats* v. *Hugo,*

115 Mass. 204, where all the cases prior to 1874 are carefully reviewed and the above doctrine announced; *Mullen* v. *Stricke,* 19 Ohio St. 135; *Morrison* v. *Marquardt,* 24 Iowa, 35; *Myers* v. *Gemmel,* 10 Barb. 537; *Palmer* v. *Wetmore,* 2 Sand. 316; *Haverstick* v. *Sipe,* 33 Pa. St. 368; *Ray* v. *Sweeney,* 1 Bush, 1; *Keeper* v. *Klein,* 51 Ind. 316; *Kramer* v. *Payn,* 4 Wend. 423; Taylor on Landlord and Tenant, sec. 380; *Haslitt* v. *Powell,* 30 Pa. St. 293; *Vanderpoel* v. *Schmidt,* 1 Daly, 311; *Myrick* v. *Hoppens,* 118 Mass. 582; *Guest* v. *Reynolds,* 68 Ill. 478.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

In this case, many questions of fact and law are discussed by counsel in their briefs, but the record is not in such shape as to authorize us to consider any of these questions, except that which arises out of the refusal of the trial court to admit certain offered evidence, as hereinafter stated. The trial was, by agreement, before the court without a jury, and resulted in a judgment for the plaintiff, which has been affirmed by the Appellate Court. The judgment of the latter court is conclusive as to the findings of fact. No "written propositions to be held as law in the decision of the case" were submitted to the court on the trial below by either side in accordance with section 42 of the Practice Act; and, hence, no question of law is presented for our determination, unless the errors assigned as to the admission or exclusion of evidence necessarily involve the consideration of such a question. *(Bank of Michigan City* v. *Haskell,* 124 Ill. 587; *Myers* v. *Union Nat. Bank,* 128 id. 478; *Hall* v. *Cox,* 144 id. 532.

The evidence tends to show that a strong light is necessary for such business of manufacturing and polishing marble as appellant was engaged in, and that the demised premises were selected by the appellant for that business mainly because of their freedom from surrounding obstructions to the supply of light. Accordingly, the defendant below offered to prove, that the erection of the Springer building on the south

side of the Keating building prevented the entry of light into the latter from the south and west. Upon objection by the plaintiff the court refused to receive the testimony, and an exception was taken to its ruling by the defendant. The action of the trial court was correct, if there is no express covenant or agreement in the lease, obligating the landlord to permit the light to pass over the south lot into the leased premises.

The English doctrine is, that "if one, who has a house with windows looking upon his own vacant land, sell the same, he may not erect upon his vacant land a structure which shall essentially deprive such house of the light through its windows." (Washburn's Ease. & Serv. marg. page 492, par. 5). This doctrine, however, does not prevail in the majority of the American States. It is held to be inapplicable in a country like this, where the use, value and ownership of land are constantly changing. Air and light are the common property of all. The owner of a lot cannot be presumed to have assented to an encroachment thereon, if he has permitted the light and air to pass over it into the windows of his neighbor's house situated upon the adjoining lot. The actual enjoyment of the air and light by the latter is upon his own premises only. The prevalent rule in the United States is, that an easement in the unobstructed passage of light over an adjoining close cannot be acquired by prescription. (2 Woodfall's Land. & Ten. marg. page 703 and notes; 1 Taylor's Land. & Ten. secs. 239, 380, and notes; *Keats* v. *Hugo*, 115 Mass. 204; *Mullen* v. *Stricker*, 19 Ohio St. 135). In the early case of *Gerber* v. *Grabel*, 16 Ill. 217, this court held that such a right might be so acquired, but in the later case of *Guest* v. *Reynolds*, 68 Ill. 478, the *Gerber* case was, in effect, overruled; and it was held, that "a prescriptive right, springing up under the narrow limitation in the English law, to prevent obstructions to window lights" "cannot be applied to the growing cities and villages of this country without working the most mischievous consequences, and has never been deemed a part of our law."

It is established by the weight of American authority, that a grant of the right to the use of light and air will not be implied from the conveyance of a house with windows overlooking the land of the grantor; and that, where the owner of two adjacent lots conveys one of them, a grant of an easement for light and air will not be implied from the nature or use of the structure existing on the lot at the time of the conveyance, or from the necessity of such easement to the convenient enjoyment of the property. (*Keats* v. *Hugo, supra; Mullen* v. *Stricker, supra;* 1 Wood's Land. & Ten. sec. 209, pages 422-3-4 and note; *Morrison* v. *Marquardt,* 24 Iowa, 35). "A grant by the owner of two adjoining lots of one of them does not imply the right of an unobstructed passage of light and air over the other." (2 Woodf. Land. & Ten. marg. page 703 and note). "The law of implied grants and implied reservations, based upon necessity or use alone, should not be applied to easements for light and air over the premises of another." (*Mullen* v. *Stricker, supra; Haverstick* v. *Sipe,* 33 Penn. St. 368; *Keiper* v. *Klein,* 51 Ind. 316).

It follows, that a landlord will not be liable for obstructing his tenant's windows by building on the adjoining close, in the absence of any covenant or agreement in the lease forbidding him to do so. (*Myers* v. *Gemmel,* 10 Barb. 537; *Palmer* v. *Wetmore,* 2 Sandf. 316; *Keiper* v. *Klein, supra;* 2 Woodf. on Land. & Ten. marg. page 703 and note).

But the authorities all agree, that the right to have the light and air enter the windows of a building over an adjoining lot may exist by express grant, or by virtue of an express covenant, or agreement. (*Hilliard* v. *Gas Coal Co.* 41 Ohio St. 662; *Brooks* v. *Reynolds,* 106 Mass. 31; *Keats* v. *Hugo, supra; Morrison* v. *Marquardt, supra.*)

The question then arises whether the erection of the Springer building could have been regarded as a violation of the express terms of the lease, if proof had been admitted showing that it obstructed the light necessary to carry on the business. The

lease contains the following provision: "Party of the first part shall not build at the rear of said premises nearer than 25 feet, and no obstruction higher than six feet shall be placed in such manner as to obstruct light to said premises." The meaning of the word, "premises," as here used, is not to be restricted to the Keating building alone, but embraces also the space in the rear thereof. The lease speaks of "all those premises * * * described as follows;" and then mentions, as constituting those premises, first, the basement, second, the store floor, "*also* a space in the yard at the rear," 25 feet deep. The space in the rear is as much a part of the premises demised as the basement and the store floor. Therefore the appellee agreed that he would not build nearer than 25 feet to the west line of the demised space west of the Keating building, which space was 25 feet wide from east to west. The Springer building was 75 feet deep, while the Keating building was only 50 feet deep. It follows that the extension of the former west of the rear of the latter was south of said space in the yard at the rear. The north wall of the Springer building did not extend further west than the west line of said space in the yard; and, consequently, the whole of the Springer building was south of the demised premises. Hence, we think counsel for appellee is right in the contention, that no part of that building can be considered as an obstruction placed in the rear, or to the west, of the premises leased to appellant. But we cannot agree with counsel in so construing the language of the provision as to limit it to obstructions placed in the rear. The landlord does not agree, that no obstruction higher than six feet shall be placed *in the rear* in such manner as to obstruct light to said premises. His agreement is, that no obstruction higher than six feet shall be placed, whether to the north, or to the west, or to the south, in such manner as to obstruct light to said premises, that is, to said space in the rear as well as to said building. The Springer building—a brick structure five stories

high—was so constructed, that its north wall joined the south wall of the Keating building and the south line of the space in the yard at the rear thereof. In view of the express provision in the lease, as above quoted and construed, we are of the opinion that the defendant below was entitled to prove, if he could, that the Springer building was an obstruction placed in such manner as to obstruct light to said premises; and that the trial court should have admitted the proof upon that subject when offered.

It is claimed, however, that the offered evidence was properly rejected, because this suit is for rent accruing during a period while the tenant was in possession. In order to constitute an eviction, it is not necessary that there should be an actual physical expulsion. Acts of a grave and permanent character, which amount to a clear indication of intention on the landlord's part to deprive the tenant of the enjoyment of the demised premises, will constitute an eviction. (*Hayner* v. *Smith*, 63 Ill. 430). If the acts of the landlord are such as merely tend to diminish the beneficial enjoyment of the premises, the tenant is still bound for the rent, if he continues to occupy the premises. Unless he abandons the premises, his obligation to pay the rent remains. (*Skally* v. *Shute*, 132 Mass. 367.) We said in *Chicago Legal News Co.* v. *Browne*, 103 Ill. 317: "The rule is well settled that the wrongful act of the landlord does not debar him from a recovery of rent, unless the tenant by such act has been deprived in whole or in part of the possession, either actually or constructively, or the premises rendered useless. *Edgerton* v. *Page*, 20 N. Y. 284; *Halligan* v. *Wade*, 21 Ill. 470; *Leadbeater* v. *Roth*, 25 id. 587."

To evict a tenant, according to the original signification of the word, is to deprive him of the possession of the land. But the landlord, without being guilty of an actual pyhsical disturbance of the tenant's possession, may yet do such acts as will justify or warrant the tenant in leaving the premises. The latter may abandon the premises in consequence of such

acts, or he may continue to occupy them. If he abandons them, then the circumstances which justify such abandonment, taken in connection with the act of abandonment itself, will support a plea of eviction as against an action for rent. If, however, the tenant makes no surrender of the possession, but continues to occupy the premises after the commission of the acts which would justify him in abandoning them, he will be deemed to have waived his right to abandon; and he cannot sustain a plea of eviction by showing that there were circumstances, which would have justified him in leaving the premises. Hence, it has been held that there cannot be a constructive eviction without a surrender of possession. It would be unjust to permit the tenant to remain in possession, and then escape the payment of rent by pleading a state of facts, which, though conferring a right to abandon, had been unaccompanied by the exercise of that right. (*Edgerton* v. *Page, supra; Boreel* v. *Lawton,* 90 N. Y. 293; *DeWitt* v. *Pierson,* 112 Mass. 8; *Warren* v. *Wagner,* 75 Ala. 188; *Wright* v. *Lattin,* 38 Ill. 293; 1 Taylor's Land. & Ten.—8 ed.—secs. 380, 381, and notes; 2 Wood's Land. & Ten.—2 ed.—sec. 477, pages 1104-1106; *Alger* v. *Kennedy,* 49 Vt. 109; *Scott* v. *Simons,* 54 N. H. 426; *Jackson* v. *Eddy,* 12 Mo. 209).

But though the tenant will not be allowed to plead eviction as a bar to the recovery of rent, where he has remained in possession after the performance of the acts which would have justified him in leaving the premises, yet he is not for that reason without remedy. In those states where the doctrine of recoupment is recognized, he may recoup such damages, as he may have sustained by reason of the acts of the landlord, against the rent sought to be recovered. (1 Taylor's Land. & Ten. sec. 374; 2 Taylor's Land. & Ten. sec. 631; 2 Wood's Land. & Ten. sec. 477, page 1107; *Edgerton* v. *Page, supra; Warren* v. *Wagner, supra*). Taylor in his work on Landlord and Tenant (sec. 631) says: "By the law of recoupment, as now established in many of the United States, the tenant can

avail himself, as a defense *pro tanto* to an action of debt for rent, of the landlord's breach of his covenants." The doctrine of recoupment is recognized in this state, and has been applied in proceedings begun by the issuance of distress warrants, and in actions for rent. (*Wright* v. *Lattin, supra; Lindley* v. *Miller,* 67 Ill. 244 *; Lynch* v. *Baldwin,* 69 id. 210 ; *Pepper* v. *Rowley,* 73 id. 262).

In *Lynch* v. *Baldwin, supra,* where the landlord had issued a distress warrant we said: "As to recouping damages for any loss or injury sustained by the tenant, we have no doubt that it may be done, as they grow out of the same transaction. The object of this inquiry is to ascertain the amount of rent due ; and if the acts of the landlord impaired the value of the use of the premises, then the tenant should not pay the same rent as if the landlord had done no act to reduce such value."

In *Pepper* v. *Rowley, supra,* which was an action to recover rent due under a lease, we said: "If there has been a breach of any covenant contained in the lease, whatever damage appellee has sustained in consequence thereof, may be recouped in this action from the amount of rent due under the lease."

In the case at bar, the consolidated proceeding not only includes a suit for rent, but also several proceedings begun by the issuance of distress warrants ; and the stipulation permits the defendant to introduce, under the general issue, "any defense and also any set off, whether matter of contract or tort, that he may have, in the same manner  *  *  *  as if specifically pleaded." We therefore think, that the offered testimony as to the effect of the erection of the Springer building upon the supply of light should have been received, in order that any damages, which the defendant may have sustained thereby, might be recouped in reduction of the amount of recovery ; and that defendant was not precluded from showing such damages by his failure to surrender possession at an earlier date.

Even if the offered testimony was not admissible as tending to show damages by way of recoupment, it was competent under the declaration in the action brought by Keating against Springer to recover damages for cutting off the light by the erection of the Springer building. Under the stipulation, not only were the suits brought by Springer to be tried together, but also with them was consolidated for trial at the same time the action in case which Keating brought against Springer. It is well settled that, although the omission of the landlord to perform his covenants may not amount to an eviction, nor operate as a bar to his claim for rent, yet the lessee has his remedy by an action to recover damages for a breach of the covenant. (*Warren* v. *Wagner, supra; Chicago Legal News Co.* v. *Browne, supra; Lounsbery* v. *Snyder*, 31 N. Y. 514; *Wright* v. *Lattin, supra; Royce* v. *Guggenheim*, 106 Mass. 201; 1 Taylor on Land. & Ten. secs. 379, 381, and notes; 2 Wood on Land. & Ten. sec. 477, page 1107).

It is furthermore claimed by the appellant, that all the matters, set up in defense, or as ground of recovery by the defendant in the present consolidated suits, were extinguished by the judgment in the forcible detainer suit, and that said judgment operates as *res judicata*, so as to bar all appellant's rights of recovery or recoupment. We are unable to yield our assent to this view. The judgment in forcible entry and detainer is conclusive only as to the right of possession, and, in a certain class of cases, as to the existence of the relation of landlord and tenant between the parties, and as to the tenant's wrongful holding over. (*Doty* v. *Burdick*, 83 Ill. 473; *Norwood* v. *Kirby*, 70 Ala. 397; *Hodgkins* v. *Price*, 132 Mass. 196; 8 Am. & Eng. Enc. of Law, page 176). It was said, in *Robinson* v. *Crummer*, 5 Gilm. 218, that "damages are not recoverable in this action, but the only judgment for the plaintiff is, that he have restitution of the premises," etc.

For the error committed in the refusal to receive the evidence offered by the defendant as hereinbefore mentioned, the

judgments of the Appellate and Circuit Courts are reversed, and the cause is remanded to the Circuit Court for further proceedings in accordance with the views herein expressed.

*Judgment reversed.*