## BAILEY & SON v. GRAY.

1. INJUNCTION—PRIVATE WAY—ALLEY—PARTIES.—A party not holding the fee to the soil over which an alley runs, cannot maintain an action to enjoin another from obstructing it.

2. EASEMENT—PRIVATE WAY.—Access to a town lot from two sides deprives the owner of the right to claim access from another way by easement of necessity.

3. PRESCRIPTION—PRIVATE WAY.—To maintain a right of way by prescription, it must be shown that it has been enjoyed *adversely* for twenty years.

4. IBID.—LIGHT AND AIR—WINDOWS.—The unobstructed passage of light and air through the windows of a person's house cannot be acquired by prescription. *McCrady* v. *Thomson,* Dud. Rep., 131, *criticised.*

5. EASEMENT—LIGHT AND AIR—PRESUMPTION.—No grant of an easement for light and air are implied by the facts, that the windows were in use at the time of conveyance, and are necessary to its convenient enjoyment.

6. EXCAVATIONS—PLEADINGS—DAMAGES—NEGLIGENCE—BUILDINGS. An action for injuries to buildings by excavations of an adjoining owner cannot be maintained without allegations of negligence.

7. REAL PROPERTY—BOUNDARIES—PRIVATE WAY—ROADS—STREAMS. Does the doctrine, that where land conveyed is bounded by a road or stream, the conveyance carries the fee to the center, apply in cases of a private way?

8. PLEADINGS—COMPLAINT—PRIVATE WAY—REAL PROPERTY.—The allegations in this complaint do not show that the alley is appurtenant to the lot of plaintiff.

Before ·ALDRICH, J., Laurens, October, 1897. Affirmed.

Action by Bailey & Son *v.* W. L. Gray, on the following complaint:

I. That the plaintiffs, Mercer S. Bailey and William J. Bailey, are and were, January 2d, 1893, partners in business, under the firm name of M. S. Bailey & Son.

II. That heretofore, on October 7th, 1863, one J. W. Simpson, for value, conveyed to Edward H. Fisher and John Agnew, their heirs and assigns, a lot of land, of which he was seized and possessed in fee in the city of Laurens, in

said county and State, with three store rooms located on a part of said lot, being described in said deed as follows: "All that corner lot of land and buildings thereon, situate and lying in the village of Laurens, S. C., containing one-fourth of an acre, more or less; bounded on the south by the street leading through the south side of the public square to Greenville Court House, on the east by the street leading to Augusta, on the south by lot belonging to the estate of John Smith, deceased, and on the west by the N. Pyles and J. Wistar and W. D. Simpson lot, the latter now vacant, and being originally a part of the lot now being conveyed, all of which lot was deeded from H. C. Young to Adams and from Adams to John W. Simpson, with the understanding, however, that the right of way to said vacant lot now owned by J. Wistar and W. D. Simpson is to be forever secured to its south side, either through the alley now opened in the rear of the block of storerooms as they now stand, or southernly to the street running east to the railroad depot lot, at least eight feet wide, together with the same width the whole rear of said vacant lot," and that the said deed was duly recorded.

III. That on the 31st day of May, 1869, the said Edward H. Fisher and John Agnew, for value, conveyed the said lot of land, with the block of stores thereon situate, and the incidents and appurtenances thereto belonging, to John Kyle, his heirs and assigns, described as follows: "All that corner lot of land and the buildings thereon, situate and lying in the village of Laurens, S. C., containing one-fourth of an acre, more or less, bounded on the north by the street leading through the south side of the public square to Greenville Court House, on the east by the street leading to Augusta, on the south by lot belonging to the estate of John Smith, deceased, and on the west by N. Pyles' lot and J. Wistar and W. D. Simpson's lot, the latter now vacant, and being originally a part of the lot now being conveyed; all of which lot was deeded by H. C. Young to Adams and by Adams to J. W. Simpson, with the understanding that the

right of way to said vacant lot now owned by J. Wistar and W. D. Simpson is to be forever secured to its south side, either through the alley now opened in the rear of the block of store rooms as they now stand, or southernly into street running east to the railroad depot lot, at least eight feet wide, together with the same width the whole rear of said vacant lot, as the same was conveyed to us, the said Edward H. Fisher and John Agnew, by John W. Simpson, by deed bearing date the seventh day of October, 1863," and that the said deed was duly recorded.

IV. That on July 9th, 1869, the said Edward H. Fisher and John Agnew, for value, conveyed to the said John Kyle, his heirs and assigns, all that lot of land in the town of Laurensville, known as lot No. 7 in the survey of the real estate of John Smith, deceased; bounded on the east by Abbeville street, on the south by Cross street, and on the west and north by lands of the estate of John Kyle, being twenty-seven feet wide and twenty-three feet long.

V. That on the    day of February, 1872, the said John Kyle died, leaving of force his last will and testament, which was admitted to probate in the probate court for Laurens, S. C., on March 7, 1872, wherein he devised the said two lots of land conveyed to him by the said Edward H. Fisher and Jno. Agnew to M. C. Law.

VI. That on the 17th day of June, 1875, the said M. C. Law and Jno. G. Law, for value, conveyed the said lots of land, with the block of storerooms thereon, with all appurtenances, to W. L. Boyd and James M. Boyd, their heirs and assigns, a mercantile firm known as Boyd Brothers, the said lots being described as follows: "All that piece, parcel or lot of land, situate, lying and being the county and State aforesaid, in the town of Laurensville, bounded on the north by the street leading through the public square to Greenville C. H., S. C.; on the west by the street leading to Augusta, Ga.; on the south by Cross street; and on the west by lands now or formerly the property of N. Pyles and J. Wistar and W. D. Simpson, comprising the two lots con-

veyed to the late John Kyle, deceased, by Edward H. Fisher
and John Agnew, of Columbia, S. C., the one on the 31st
day of May, 1869, and the other on July 9th, 1869, sup-
posed to contain, in the aggregate, something more than
one-fourth of an acre, be the same more or less, saving and
excepting and reserving an alley eight feet wide, for the
benefit of the owners of the Simpson lot above mentioned,
as set forth in the deed of 31st of May, 1869," and that the
said deed was duly recorded.

VII. That on March 14th, 1885, the undivided interest
of James M. Boyd in the said premises, with the block of
stores and all incidents and appurtenances thereto belong-
ing, were duly conveyed to the said W. L. Boyd, his heirs
and assigns.

VIII. That on January 12th, 1892, the said W. L. Boyd,
being the owner in fee of the said premises, and being in
possession of the same, for the benefit of his creditors, con-
veyed to John W. Ferguson, his heirs and assigns, the said
premises, which had been conveyed to W. L. Boyd and
James M. Boyd by the said John Kyle, and that the said
deed was duly recorded.

IX. That on January 2d, 1893, the said John W. Fergu-
son, as assignee aforesaid, after advertising the said prem-
ses for sale, in lots, describing an alley ten feet wide run-
ning in the rear of said store lots or block of stores, and
north of the remainder of said premises, the remainder of
said premises being a vacant lot lying on the south side of
said alley, sold at public outcry to the plaintiffs for the sum
of $6,300, and conveyed to them, the said Mercer S. Bailey
and William J. Bailey, under their firm name of M. S.
Bailey & Son, their heirs and assigns, for the said sum of
money, the said corner lot, with the block of stores thereon
situate, and appurtenances thereto belonging, described in
said deed of conveyance as follows: All that lot or parcel
of land, situate in the corporate limits of the city of Lau-
rens, known as store room No. 1 in the Boyd block, bounded
on the north by Main street, east by Harper street, south

by an alley ten feet wide, and west by storeroom No. 2 of said block. Also, all that certain other lot or parcel of land in the city of Laurens, known as storeroom No. 2 of said block, bounded on the north by Main street, east by storeroom No. 1, south by alley ten feet wide, and west by storeroom No. 3. Also, all that certain other lot or parcel of land in the city of Laurens, known as storeroom No. 3 of the same block, bounded on the north by Main street, east by storeroom No. 2, south by an alley ten feet wide, and west by Fowler's block, and that said deed was duly recorded; and that under the same advertisement, and at the same time and place, the said John W. Ferguson, as assignee aforesaid, sold at public outcry to the defendant, W. L. Gray, for the sum of $505, the remainder of the said premises, the same being a vacant lot, and lying south of said alley, and described in said advertisement and deed as follows: "All that certain lot, lying, being and situate within the corporate limits of the city of Laurens, in the county and State aforesaid, containing one-tenth of an acre, more or less, and bounded north by an alley ten feet wide, in the rear of the Boyd block and Fowler block, east by Harper street, south by South street, and west by Watts lot." ·

X. That each of said stores, purchased as aforesaid from the said assignee, are, and have been for over twenty years, two stories high, with glass windows for admitting light; in the rear of each of said stories, overlooking the said alley and each store lot in the basement of the same, was, and has had for over twenty years, a cellar under the first story of the same, opening out on a level with the ground on said alley, and the said alley is necessary for the use of said cellars, and for admitting light and air to the said windows; and that the plaintiffs are in possession of the said corner lot comprising the said three stores and store lots, and since their said purchase of the same have been using the said alley as necessary and appurtenant to the said premises; and that those under whom plaintiffs claim had so used the said alley as appurtenant to the said store lots for over twenty

years; and that without the use of said alley the plaintiffs would have no outlet from the cellers in said stores to the public highway, and would have no light and air through their windows in the rear of said storerooms; and the said premises as purchased would become almost useless to the plaintiffs, and be greatly damaged.

XI. That the title of the plaintiffs' and defendant's premises abutting on said alley extends to the center line of said alley, with the right of easement to either over the entire length and breadth of the same in connection with their respective premises, but neither has the right to obstruct or destroy said alley without the consent of the other.

XII. That the defendant, W. L. Gray, went into and is in possession of the lot lying south of said alley, under and by virtue of his said purchase of the same from John W. Ferguson, as assignee as aforesaid, and is threatening to excavate and obstruct said alley, and to erect a brick building thereon, extending over and from his own lot across said alley to the rear of the plaintiffs' block of stores, which excavation, if made, will injure plaintiffs' walls, which building, if erected on said alley, will destroy the plaintiffs' use of their said cellars, and of the air and light in the rear of said buildings, and the defendant has entered upon said alley and commenced the threatened acts aforesaid, against the objections and without the consent of the plaintiffs.

XIII. That the threats and acts of the defendant aforesaid are inconsistent with the facts and conditions of the purchase of his said lot, and inconsistent with and contrary to the rights of the plaintiffs as derived from their purchase of the said premises, contrary to the rights of the plaintiffs as exercised since their said purchase, and by those under whom they claim for more than twenty years; that the said threats and acts of the said defendant are prejudicial to the plaintiffs, and if the same are continued and carried out, the said defendant will cause great and irreparable loss and injury to the plaintiffs.

Wherefore, the plaintiffs demand judgment against the

defendant, that he be enjoined and restrained perpetually from obstructing or excavating the said alley, or from erecting buildings or material thereon, or any part thereof, and for such other and further relief as may be just, and for the costs of this action.

From judgment dismissing complaint on demurrer, plaintiffs appeal.

*Messrs. T. P. McGowan* and *Ferguson & Featherstone,* for appellants, cite: *Complaint should be liberally construed:* 27 S. C., 558; 8 S. C., 104. *Recitals in deeds act as estoppels:* 18 S. C., 493; 72 Me., 393. *Construction of:* 14 S. C., 165; 23 S. C., 233. *Grant or reservation of way or road carries easement and not fee:* 44 N. H., 465; 9 Allen, 164; 8 N. H., 96; 98 Pa. St., 1; 8 Part., 9; 10 Me., 391; 10 Gray, 67. *Adverse possession:* 48 S. C., 472; 45 S. C., 312. *Different persons may be entitled to two or more distinct easements:* 10 Pick., 138; 1 Sp., 22. *Grant calling for road or stream carries fee to center:* 1 McC., 68; McM. Eq., 289; 2 Bay, 389. *The way is appurtenant to plaintiffs' property:* 5 Rich., 280, 415; 1 Senn., 492; 42 N. Y., 73, *3; 18 N. Y., 48; 115 Mass., 410; 16 Gray, 373; 5 Md., 321; 21 Pick., 292; 18 Mich., 66; 16 Barb., 251. *Lights in use at time of purchase is incident to the house as against purchaser at time from same grantor:* 12 Mass., 157. *Assignee had same power to sell with easements as assignor:* 43 Ia., 265; 17 Wall., 44; 106 Mass., 554. *Defendants are estopped by their acts:* 37 S. C., 337; 5 Md., 321; 1 Bay, 239; 9 Gray, 445; 17 Mass., 413; 26 N. Y., 105; 48 S. C., 267; 59 Ga., 450; 22 S. C., 551; McM. Eq., 137; 54 N. Y., 35; 109 U. S., 608; 5 Rich., 525. *An easement of way and of light and air is an interest in the value of an incorporeal hereditament in or over the lands of another:* 2 McC., 449; 3 Paige, 254; 6 Gray, 548; 1 Md., 540; 54 A. D., 668; 61 A. D., 276.

*Messrs. Wells, Ansel & Cothran,* contra, cite: *Was the way appurtenant or in gross?* 21 S. C., 224. *Duties of*

*assignee are created by deed:* 4 Miss., 367. *Continuous easements are enjoyed without the act of man:* 14 Am. St. R., 550. *Non-continuous easements are otherwise:* 68 N. Y., 62. *English doctrine of light and air does not prevail in this State:* 5 Rich., 311; 115 Mass., 204; 19 Ohio St., 135; 146 Ill., 481. *Injury to buildings from excavation only lies in cases of negligence:* 122 Mass., 122. *Easement cannot be established by intendment or prescription:* 22 S. C., 545.

Nov. 4, 1898. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. The question presented by this appeal being whether his Honor, Judge Aldrich, erred in sustaining a demurrer upon the ground that the allegations in the complaint were not sufficient to constitute a cause of action, it will be necessary for the Reporter to incorporate in his report of the case, a copy of the complaint as set out in the "Case." The object of the action was to obtain an injunction restraining the defendant from obstructing and excavating a certain alley in the town of Laurens, and from erecting buildings or material thereon or any part thereof. It appears from the allegations of the complaint, which, for the purposes of this discussion, must be assumed to be true, that on the 7th of October, 1863, J. W. Simpson conveyed to Fisher & Agnew a lot of land in said town, upon which three storerooms stood, containing one-fourth of an acre, more or less, the boundaries of which are specifically set forth in the second paragraph of the complaint, the western boundaries being a lot of N. Pyles and a vacant lot of J. Wistar and W. D. Simpson, "and being originally a part of the lot now being conveyed, all of which lot was deeded from H. C. Young to Adams, and from Adams to John W. Simpson, with the understanding, however, that the right of way to said vacant lot now owned by J. Wistar and W. D. Simpson, is to be forever secured to its south side, either through the alley now opened in the rear of the block of storerooms as they now stand, or southernly to the street running east to the railroad depot lot, at least eight

feet wide, together with the same width the whole rear of said vacant lot." On the 31st of May, 1869, Fisher & Agnew conveyed the said lot to John Kyle, describing it in practically identical terms with those used in the preceding deed, including the words used to secure the right of way to the lot then owned by J. Wistar and W. D. Simpson, which, for convenience, will hereinafter be designated as the Simpson lot. On the 9th of July, 1869, Fisher & Agnew conveyed to said Kyle another lot, formerly belonging to the estate of John Smith, which appears to lie south of the lot previously conveyed to said Kyle. Both of the lots thus conveyed to Kyle by Fisher & Agnew were devised by John Kyle to M. C. Law, and she, with John G. Law (probably her husband), on the 17th of June, 1875, conveyed the same to W. L. Boyd and James M. Boyd. In that deed, after describing the premises conveyed so as to cover both of the lots conveyed by Fisher & Agnew to John Kyle, the following words are used: "Saving and excepting and reserving an alley eight feet wide, for the benefit of the owners of the Simpson lot above mentioned, as set forth in the deed of 31st of May, 1869." On the 14th of March, 1885, the undivided interest of the said James M. Boyd in the above mentioned premises was conveyed to the said W. L. Boyd; and on the 12th of January, 1892, the said W. L. Boyd, by his deed of assignment for the benefit of his creditors, conveyed the said premises to John W. Ferguson, Esq. On the 2d of January, 1893, the said Ferguson, as assignee as aforesaid, "after advertising the said premises for sale in lots, describing an alley ten feet wide, running in the rear of said store lots or blocks of stores, and north of the remainder of said premises—the remainder of said premises being a vacant lot lying on the south side of said alley—sold at public outcry to the plaintiffs, for the sum of $6,300, and conveyed to them * * * the said corner lot, with the block of stores thereon situate and appurtenances thereto belonging"—the premises conveyed being described as bounded on the south by the said ten-foot alley. At the

same time the remainder of the premises was sold and conveyed to the defendant for the sum of $505, and are described as lying south of said ten-foot alley, and bounded north by the same alley.

The foregoing statement shows how the parties—plaintiffs and defendant—derived their title to the premises which they respectively claim; but we are unable to perceive how it shows, or even tends to show, that the plaintiffs ever acquired any such easement as that upon which they base their claim for the relief demanded in their complaint. On the contrary, it shows that such easement was originally created for the benefit of the owners of the Simpson lot, and as appurtenant to that lot, and not for the benefit of the owners of the premises now held by plaintiffs, nor as appurtenant to such premises. This easement, thus originally created for the benefit of the owners of the Simpson lot, is recognized in all of the subsequent conveyances, in which the terms are set forth in the complaint, and in the last one, in which the terms are specially set forth—the deed from M. C. Law and Jno. G. Law to the Boyds—it is emphasized and made stronger by the saving and excepting words, above copied from that deed. But in none of these papers is there a hint even of any easement in favor of any other person than the owners of the Simpson lot; and they are not before us making any complaints, and hence we are not at liberty to consider what may be their rights. Nor are we at liberty to consider and determine who is the owner of the fee in the land over which the alley referred to has been established, as the necessary parties are not before us. Whether such fee remained in the devisees by virtue of the saving clause in their deed to the Boyds, or whether it remained in Mr. Ferguson, as assignee, by reason of the fact that in his conveyances to both plaintiffs and defendant, the premises conveyed are bounded by said alley, are questions which we cannot now consider, for want of the necessary parties. It is very certain, however, that such fee is neither in the plaintiffs nor the defend-

ant, unless it be under the legal proposition set forth in paragraph XI. of the complaint, which will hereinafter be considered.    It is obvious, therefore, that the allegations in the complaint based on plaintiffs' paper title are not suffi- cient to constitute a cause of action.

But the plaintiffs contend that the allegations contained in the X., XII., and XIII. paragraphs of their complaint are sufficient to constitute a cause of action.    These al- legations are long and detailed, and need not be set forth *in hæc verba*, as they can be seen by reference to the copy of the complaint, which will be incorporated in the report of this case.    It is sufficient to say here, that, as we understand it, these allegations are intended to show that the plaintiffs are entitled to the easement which they claim: 1st. From necessity.    2d. By prescription.    Inas- much as it appears in the complaint that plaintiffs' premises are open, on two sides, to the public streets of Laurens, we do not see how it is possible to base the claim of easement upon necessity.    The fact that it would be very convenient for plaintiffs to have access to their lot from the south side as well as from the public streets on the north and east of their lot, does not constitute that "imperious necessity," as it is called in some of the books, which is necessary to con- stitute a right of way by necessity.    As is said by Nott, J., in *Lawton* v. *Rivers*, 2 McC., at page 448, "there must be an actual necessity, and not a mere inconvenience, to enti- tle a person to such right."    It is true, that the distinguished Judge goes on to say that there need not be "an absolute and irresistible necessity; an inconvenience may be so great as to amount to that kind of necessity which the law re- quires, and it is difficult and perhaps impossible to lay down with exact precision the degree of inconvenience which will be required to constitute a legal necessity." But he proceeds to show that, as the plaintiff in that case had access to the public road by a navigable water course flowing in front of his door, there was no legal necessity which entitled him to claim a right of way, by land,

33—53

through his neighbor's premises. So, here we say that as the plaintiffs had access to their lot from the public streets on two sides, there was no legal necessity that he should have access from the south side. We suppose that in many, if not most cases, the owner of a lot in a town or city, would find it very convenient to have access to his lot from all the four sides; but when he has access from two sides we do not think that the inconvenience of not having access from one side can be regarded as so great as to amount to such a necessity as the law contemplates.

2d. As to prescription. As is said in the case just cited, "three things appear to be necessary to establish a right by prescription. 1st. Use and occupation or enjoyment. 2d. The identity of the thing enjoyed; and, 3d. That it should be adverse to the right of some other person." The allegations in the paragraphs of the complaint now under consideration seem to contemplate that two easements are claimed: 1st. A right of way. 2d. A right to light and air. We will consider these easements separately, and first as to the right of way. While it may be conceded that the allegations of the complaint are sufficient to show the first requisite laid down by Nott, J., in *Lawton* v. *Rivers*, *supra*, as necessary to establish a right by prescription, viz: the enjoyment of such right of way by the plaintiffs and those under whom they claim for a period exceeding twenty years; and while, possibly, the second requisite, viz: the identity of the thing enjoyed, is sufficiently alleged, though it seems that in the conveyance from Mr. Ferguson, as assignee, to the plaintiffs, the width of the alley was changed from eight to ten feet, by what authority does not appear; yet there is a total absence of any allegation as to the third requisite, viz: that the right claimed has been exercised and enjoyed *adversely* to the right of any other person, nor is there any fact alleged from which adverse use and enjoyment could be inferred. Indeed, taking all the allegations in the complaint together, it would seem that such use and enjoyment was permissive and not adverse. This is fatal

to the complaint, so far as it is based upon a claim of right of way by prescription.

2d. As to the right to light and air, which it is claimed has been acquired by prescription. The English rule upon this subject has been distinctly repudiated in this State (*Napier* v. *Bulwinkle*, 5 Rich., 311); in Massachusetts (*Keats* v. *Hugo*, 115 Mass., 204, also reported in 15 Am. Rep., 80); in Pennsylvania (Rennyson's Appeal, 94 Penn. St., 147, reported, also, in 39 Am. Rep., 777), and in New York (in *Doyle* v. *Lord*, 64 N. Y., 432, reported, also, in 21 Am. Rep., 629). The American doctrine, as contra-distinguished from the English doctrine, is distinctly recognized. So in Ohio, in the case of *Mullen* v. *Stricker*, 19 Ohio, 135, reported, also, 2 Am. Rep., 379, it is said to be the settled law of that State, "that no prescriptive right to the use of light and air through windows can be acquired by any length of use or enjoyment." So, also, in Illinois, in the case of *Keating* v. *Springer*, 146 Ill., 481, reported, also, in 37 Am. St. Rep., 175, it is said: "The prevalent rule in the United States is, that an easement in the unob-structed passage of light over an adjoining close cannot be acquired by prescription." The syllabus of the case of *Napier* v. *Bulwinkle*, *supra*, which correctly represents the decision of the Court, reads as follows: "Plaintiff's windows in his house, at the extremity of his own land, looked over defendant's house, and the enjoyment of light and air through them continued for fifty years; defendant then ob-structed them by a new house, built on the foundation of his old one, and carried to a greater height; action for the obstruction; it was held that the enjoyment of every ease-ment must be adverse—that is, as of right to raise by twenty years continuance the presumption of a grant, which im-plies the assent of the servient owner; that in the case of any easement claimed, which, if not rightful, constitutes a legal injury for which an action will lie, neglect to sue for the period of twenty years, during which the enjoyment continued, furnishes evidence of assent; and so proof of the

enjoyment, when nothing else appears, raises the presumption; but that, in the case of a window, which gives no cause of action to the owner of the space over which it looks, he is not bound to obstruct within twenty years, to prevent the acquisition of a right; and without some other circumstance from which his assent to the easement as a right may be inferred, his grant cannot be presumed from the mere unobstructed enjoyment." It is true, that there is an older case in this State—*McCready* v. *Thomson*, Dud. Rep., 131—which would seem to countenance the English doctrine that an uninterrupted enjoyment of light and air through windows overlooking the premises of another for more than twenty years, would be sufficient to create such easement; but the comments on that case in the subsequent case of *Napier* v. *Bulwinkle*, show that such doctrine is not now recognized in this State, nor in many, if not most, of the other States. The true rule, as we understand it, is that a right to an unobstructed passage of light and air through the windows of a person's house cannot be acquired by the enjoyment of such privilege for any length of time, unless it appears that such enjoyment had been in some way *adverse* to the legal rights of his neighbor—some circumstance that would give to the neighbor a right of action for the invasion of his legal rights—and it is difficult to conceive how the enjoyment of light and air can be adverse to the legal rights of another; several of the cases above cited from other States rest their conclusion that such an easement cannot be acquired by prescription, upon the ground that enjoyment of light and air is not adverse. As is well said by Mr. Justice Metcalf, in *Rogers* v. *Sawin*, 10 Gray, 376: "The making of a window in one's building, on his own land, and overlooking the land of his neighbor, is no encroachment on his neighbor's rights, and, therefore, cannot be regarded as adverse to him." Or, as is said by Gray, C. J., in *Keats* v. *Hugo, supra:* "The actual enjoyment of the air and light by the owner of the house is upon his own land only. He makes no tangible or visible use of the adjoining lands, nor,

indeed, any use of them which can be made the subject of an action by their owner, or which in any way interferes with the latter's enjoyment of the light and air upon his own lands, or with any use of those lands in their existing condition. In short, the owner of the adjoining lands has submitted to nothing which actually encroached upon his rights, and cannot, therefore, be presumed to have assented to any such encroachment."

If, then, the allegations in the complaint are insufficient to show that the plaintiffs acquired the easement claimed by prescription, our next inquiry is, whether there are any allegations sufficient to show that, under any of the conveyances mentioned in the complaint, the plaintiffs acquired such easement by grant. It is quite certain that none of these conveyances show any express grant of such easement to the plaintiffs or any of those under whom they claim; and we think that none of them show any implied grant. The fact that Mr. Ferguson, who had acquired the title to the lot now claimed by plaintiffs and the lot claimed by defendant, on the same day, conveyed the one to the former and the other to the latter, and the further fact that at that time the alley was open and unobstructed, are not sufficient to imply a grant of the easement claimed by the plaintiffs. In *Mullen* v. *Stricker*, *supra*, the owner of two adjacent lots, having dwelling houses on them, conveyed one to the plaintiff and the other to the defendant, by deeds containing covenants of warranty. The house purchased by plaintiff received light and air through windows overlooking an open space on the lot purchased by defendant. The defendant being about to obstruct these windows by building upon and filling up the open space, an action for injunction was brought by plaintiff. *Held*, that there was no grant of an easement for light and air implied from the fact that the windows were in use at the time of the conveyances, and were necessary to the convenient enjoyment of the property, and the injunction

was refused.   See, also, *Keating* v. *Springer*, *supra*, and *Keats* v. *Hugo*, *supra*, to same effect.

We are next to consider the allegation in the XII. paragraph of the complaint, that the excavation threatened by defendant will injure and endanger plaintiff's walls.   In the case of *Gilmore* v. *Driscoll*, 122 Mass., 199, reported also in 23 Am. Rep., 312, the law upon this subject is elaborately reviewed by Gray, C. J., and it is there shown to be the settled rule in this country that while the soil, *in its natural condition*, cannot be lawfully injured by excavations made by the adjoining proprietor on his own land, yet for injuries done to buildings or other improvements no right of action can be maintained, without allegations of negligence; and there is no such allegation in the complaint.

It only remains to consider the legal proposition stated in the XI. paragraph of the complaint, whereby it is claimed that plaintiffs and defendant are each the owners of the fee in the soil over which the alley runs, to the center of the alley, under the well settled doctrine that where land conveyed is bounded by a road or stream, the conveyance carries the fee to the center of the road or stream.   Whether this doctrine would apply in this case, where the boundary is an alley—a private way—need not be considered, under the view we take of this case.   The Circuit Judge held that this doctrine does not apply to this alley, as it was "a mere private right of way appurtenant to the Simpson lot."   The exception imputes error in this holding, because "he should have held that the plaintiffs have an interest in said alley as incident and appurtenant to their said premises, although the alley may be only a private way, subject to an easement in favor of the Simpson lot."   But, as we have seen, the allegations in the complaint are not sufficient to show that the alley was appurtenant to the premises of the plaintiffs. For this reason, therefore, the exception cannot be sustained.   But, besides this, the clause in the deed from the

Laws to Kyle expressly excepts the *alley*, *not* merely the right of way through the alley, and, therefore, we do not see how either plaintiffs or defendant can claim title to the soil over which the alley runs, or any part thereof. The devisees of Kyle, and those under whom they claim, took their title subject to the right of way secured to the owners of the Simpson lot, and the only way by which this right could be preserved was by excepting the strip of land eight feet wide, over which the alley run, from the premises conveyed to the Boyds.

We agree, therefore, with the Circuit Judge, that the facts stated in the complaint are not sufficient to constitute a cause af action in the plaintiffs, and hence there was no error in sustaining the demurrer.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.