**Celia Laffey, Appellant, v. Ross A. Woodhull, Appellee.**

**Gen. No. 33,908.**

Opinion filed March 11, 1930.

RATHJE, WESEMANN, HINCKLEY & BARNARD, for appellant; FRANCIS E. HINCKLEY, of counsel.

THOMAS J. PEDEN, PATRICK J. MURPHY and GERALD RYAN, for appellee.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

This was a suit for rent reserved in a lease from plaintiff to defendant for a year from October 1, 1926, for the monthly rent in advance of $200. Under a warrant of attorney contained in the lease a judgment for the rent for the months of May and June, 1927, was entered. On defendant's motion the judgment was vacated and defendant given leave to defend, his petition to vacate standing as his affidavit of merits. A trial was had without a jury. The court found the issues against the plaintiff, vacated the judgment by confession and entered judgment against the plaintiff for costs, from which she appeals.

Defendant claimed a constructive eviction by reason of the failure of appellant to supply hot water and heat as provided for in the lease wherein the landlord expressly agrees to "supply hot water for the use of said tenant out of all hot water faucets in said apartment, and the heat for the heating apparatus in said building. The heat is to be furnished at all reasonable hours, day or evening, when necessary, from the first day of October until the thirtieth day of April of the succeeding year." The lease then states that the lessor shall not be liable in damages "for unavoidable delay or any other reasons whatsoever in not furnishing hot and cold water or heat for the heating apparatus," and then proceeds to say: "Also in the event that there is not sufficient heat supplied, the party of the second part hereby waives any and all right to claim an eviction." Anomalous as this final clause is, and inconsistent with the covenant to furnish heat at all reasonable hours, etc., perhaps it was by reason of this provision that the court on plaintiff's motion at the

close of the trial struck out all evidence relating to failure to furnish heat. The court, however, held that there was a failure on the part of plaintiff to supply hot water as covenanted in the lease, and that such failure constituted a constructive eviction.

To the ruling excluding the evidence relating to failure to furnish heat, appellee has filed cross errors. But we do not deem it necessary to consider them, although the evidence on that subject tended to show plaintiff's utter and persistent disregard of that covenant after numerous complaints of the breach were made, and that her disregard thereof was a continuing breach of that covenant. Unless the final quoted clause of the lease would preclude defendant from setting up the breach, the judgment might well have rested on a constructive eviction by reason of the failure to furnish such heat as well as upon the failure to furnish hot water.

However, if the evidence was sufficient to sustain a constructive eviction for failure to furnish hot water we need not consider the cross errors.

It appears from the evidence that defendant found it necessary to complain at frequent intervals to plaintiff, and to her renting agent who brought such complaints to plaintiff, of the lack of not only sufficient heat but of hot water; that on numerous occasions during his occupancy he had complained to plaintiff that he had "let the water run and run" without getting any hot water either for a bath or common domestic purposes, and that it became necessary on many occasions to heat hot water on a gas stove to meet household demands therefor.

Plaintiff had no janitor. She took care of the boiler and the firing herself. The building contained some 14 apartments. Defendant rented one of them. On each occasion when complaints of inadequate heat and no hot water were made by defendant or some member

of his family plaintiff promised to do something about it. Several times after complaints, plaintiff's agent examined the premises and found that there was insufficient heat or pressure to furnish either heat or hot water and on those occasions started up the fires himself until the proper pressure was registered. Sometimes plaintiff's sister went to the basement and threw in coal. Other tenants also complained of such conditions. On each occasion defendant relied on plaintiff's verbal promises that she would see about it. At intervals requisite heat and hot water would be furnished and then again occasions would arise for similar complaints. These complaints became more and more frequent. Plaintiff as often renewed her promises and indicated in various ways her intention to remove the causes of complaint. Finally in the month of April defendant came home sick and needing and being unable to get hot water, notified the agent that the promises not being fulfilled he would leave the premises. He left them April 21. The rent was paid up to May 1. This suit is for the rent of May and June.

There was no attempt on the part of plaintiff to controvert any of the evidence of this state of facts. They were sufficient, in our judgment, regardless of the failure to furnish heat, to warrant the court's finding and judgment.

Without disputing the facts appellant urges that to constitute an eviction there must be something of a grave and permanent character done by the landlord with the intention of depriving the tenant of the enjoyment of the demised premises. There was practically a continuing breach of the covenant to furnish hot water. That the failure to comply with the terms of the lease in this respect after so many complaints and failure to fulfil plaintiff's promises to remedy the matter amounted to a wilful failure and was intentional on the part of the landlord is hardly open to question.

Nor in the light of modern conditions can it be doubted that the failure to furnish hot water tended to deprive the tenant of the use and enjoyment of the premises contemplated by the lease, and in that respect constituted a constructive eviction. As said in *Barnard Realty Co. v. Bonwit*, 155 N. Y. App. Div. 182, 139 N. Y. Supp. 1050:

"Very large numbers of people live in tenement houses, apartment houses, and apartment hotels. . . . Such tenants have, and can have, control only of the inside of their own limited demised premises. Conditions unknown to the ancient common law are thus created. This requires elasticity in the application of the principles thereof. An intolerable condition, which the tenant neither causes nor can remedy, seems to me warrants the application of the doctrine of constructive eviction."

The lease expressly provided for supplying hot water for the use of the tenant out of all hot water faucets in said apartment. The evidence clearly shows there was no compliance with this covenant. In view of modern usages and ways of living, and the methods of supplying conveniences therefor in modern apartments, it can hardly be doubted that supplying hot water for the ordinary comforts of life is as indispensable to the enjoyment of rooms in an apartment building as other usual forms of service the landlord covenants to furnish, such as heat, elevator service, etc.

In *Gibbons v. Hoefeld*, 299 Ill. 455, the proof tended to show that by reason of the failure of the landlord to perform his duty a portion of the rented premises became flooded so as to render them untenantable. The court held that the determining factor was not whether the landlord intended the result but whether he wilfully refused to fulfil his promise or so negligently performed it that what he did was of no benefit in protecting the tenant in the enjoyment of the de-

mised premises. In *Keating v. Springer*, 146 Ill. 481, the court said: "But the landlord, without being guilty of an actual physical disturbance of the tenant's possession, may yet do such acts as will justify or warrant the tenant in leaving the premises. The latter may abandon the premises in consequence of such acts, or he may continue to occupy them. If he abandons them, then the circumstances which justify such abandonment, taken in connection with the act of abandonment itself, will support a plea of eviction as against an action for rent." In *Kinsey v. Zimmerman*, 329 Ill. 75, it was held that where there was testimony of repeated unavailing requests by the tenant to the landlord to repair a leak that had a tendency to deprive the tenant of the use of a room for the purposes of his business, that such evidence tended to establish a constructive eviction. It was said in *Lawler v. McNamara*, 203 Ill. App. 285, that it is now well settled law that failure of the landlord to furnish heat in an apartment in accordance with the terms of the lease amounts to a constructive eviction which justifies the tenant in abandoning the premises. It was held in *Allmon v. Davis*, 248 Ill. App. 350, that where the premises were demised to the tenants to be used as a dwelling, and the condition of them was such that it was impossible to obtain water for personal or other use that there was a constructive eviction.

We see no good reason for making any distinction between a breach of contract to supply hot water in an apartment, a necessity and convenience usually contracted for and expected in modern city apartments, and a failure to furnish heat or other forms of services necessary and covenanted for to make the premises tenantable.

As before stated, it appears that defendant protested, continuously and repeatedly, against the failure to supply adequate heat and hot water, and that plaintiff has continuously promised to remove the cause of

the failure. Relying upon the fulfillment of these promises defendant did not abandon the premises until confronted with the serious condition referred to. It is contended that his retention of the premises constituted a waiver. But where the breach is of a continuing nature the waiver of past breaches does not preclude taking advantage of subsequent or continued breaches. It is said in Tiffany on Landlord & Tenant, vol. 2, p. 1264: "A delay in abandonment is, however, it seems, excused, if this is the result of promises by the landlord to remove the cause for abandonment. And though the tenant fails to abandon the premises on account of conditions justifying him in so doing, this does not prevent him from so doing on a subsequent renewal of such conditions in a more aggravated form and from then asserting an eviction."

In view of the fact that plaintiff did not see fit to controvert the facts showing her violation of the covenant to furnish hot water, we think, regardless of any other facts pleaded in defense and the ruling of the court with regard thereto, the judgment should be affirmed.

*Affirmed.*

SCANLAN and GRIDLEY, JJ., concur.